SULLIVAN v. DAMON et al.

(District Court, N. D. Iowa, W. D. January 28, 1913.)

No. 195, Equity.

1. PUBLIC LANDS (§ 106*)—CONTEST—DECISION OF LAND DEPARTMENT—CONCLUSIVENESS.

Decision of a contest for public land by the Land Department is conclusive on the courts in the absence of any claim of mistake in the Department's finding of facts, or that such finding was induced by fraud of the successful party.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 104, 301, 302; Dec. Dig. § 106.*

Decisions of Land Department, their conclusiveness and effect, see notes to Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & Silver Min. Co. v. North Star Min. Co., 28 C. C. A. 344; Uinta Tunnel Min. & Transp. Co. v. Creede & Cripple Creek Min. & Mill. Co., 57 C. C. A. 207.]

2. PUBLIC LANDS (§ 89*)—PURCHASE FROM RAILROAD—HOMESTEAD CLAIMANT—CONTEST—AWARD BY LAND DEPARTMENT.

Certain land having been patented to the state of Iowa for the benefit of the Sioux City & St. Paul Railroad Company, a part of the grant was sold by the railroad company before patent in June, 1888, to defendant's ancestor. Notwithstanding the land was never patented to the railroad company, defendant's ancestor was awarded a patent therefor under the Adjustment Act (Act Cong. March 3, 1887, c. 376, § 4, 24 Stat. 557 [U. S. Comp. St. 1901, p. 1596]). It having been determined that the railroad company was not entitled to the land, complainant sought to enter it as a homestead; but on a contest it was awarded to defendant's ancestor, who had had actual possession for some seven years under his purchase from the railroad company and had cultivated more than 60 acres thereof. *Held*, that the land was not subject to homestead entry.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 270–272; Dec. Dig. § 89.*]

In Equity. Suit by John Sullivan against Annette Damon and others to recover certain land. On final submission. Bill dismissed.

Sullivan & Griffin, Henderson & Fribourg, and Alfred Pizey, all of Sioux City, Iowa, for complainant.

John E. Stryker, of St. Paul, Minn., for defendants.

REED, District Judge. This suit is by the complainant to require the defendants, as the widow and heirs at law of M. H. Damon, deceased, to convey to him the legal title to certain land in O'Brien county, this state, which it is alleged the defendants hold in trust for the complainant. The land is a part of that patented by the United States to the state of Iowa under the act of Congress approved May 12, 1864 (Act May 12, 1864, c. 84, 13 Stat. 72), for the benefit of the Sioux City & St. Paul Railroad Company, but which was never conveyed by the state to that company for the reasons stated in the opinion of the Supreme Court of the United States in Sioux City & St. Paul Railroad Company v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177. The complainant claims the land under the homestead laws of the United States, and the defendants under a purchase thereof by their ancestor, M. H. Damon, in June,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1888, for its then fair value, from the Sioux City & St. Paul Railroad Company, and a patent to him from the United States under the act of Congress above mentioned, pursuant to that purchase, and section 4 of chapter 376 of an act approved March 3, 1887 (24 Stat. 557 [U. S. Comp. St. 1901, p. 1596]), commonly known as the "Adjustment Act" of Congress.

The rights of claimants under the homestead laws of the United States to parts of this land as against purchasers thereof from the railroad company were considered by this court in Harvey v. Holles (C. C.) 160 Fed. 531, and other cases following that, including the case of Lyle v. Patterson (C. C.) 160 Fed. 545, and Dockendorf v. Bassett (C. C.) 160 Fed. 543. The two cases last named were affirmed by the Court of Appeals for this circuit, at 176 Fed. 909, 100 C. C. A. 379, and 176 Fed. 917, 100 C. C. A. 387, respectively.

There was a contest between the complainant and M. H. Damon before the Land Department of the United States for the land in question, which was awarded to Damon by the local land office, and its decision was affirmed by the Commissioner of the General Land Office, and that in turn by the Secretary of the Interior, upon successive appeals of the complainant; and a patent was issued to Damon for the land pursuant to such decisions, February 27, 1901. In the hearing before the local land office that tribunal found the facts to be as follows:

"The evidence submitted on behalf of M. H. Damon shows that he is a resident of the state of Minnesota; that he formerly resided in Sioux City, Iowa, and owned land adjoining the land in controversy; that in 1888, on the 18th day of June, he entered into an agreement with the Sioux City & St. Paul Railroad Company to purchase the S. W. ¼ of N. E. ¼ and N. W. ¼ S. E. ¼, section 7, township 97, range 42, at the agreed price of $1,200, paying $80 on the date the contract was entered into, and on July 5, 1889, he paid $89.60, and on November 7, 1889, he paid $115.50. Suit being brought by the United States against the aforesaid railroad company, involving the title to this land, further payments were not required by the railroad company during the pendency of this suit. He has been in continuous and undisputed possession of said land from the date of his purchase until the decision of Supreme Court of the United States, October 21, 1895. After that the homestead claimant, Sullivan, * * * made several attempts to take possession of the land. Several years before the claimant, Damon, entered into the contract to purchase the land, he had bought three 40's of land, the title of which came through the Sioux City Railroad Company. He testifies that at the time he entered into the contract involving this case he believed the land was in the same condition as that of the three 40's he had bought prior thereto. He testified in his cross-examination that he had never heard a word about the title of the land being in question at the time he made the contract, and that he did not know that the Governor of the state of Iowa had refused to certify or patent it to the company. No part of the purchase money has been refunded, and no suit has been brought to recover the same. Under these circumstances we are of the opinion that when the purchasing claimant, Damon, bought the land, he had no actual knowledge and did not know that the title to the land was in dispute, and that he bought it believing the railroad company had good right to sell. His application is therefore approved, and, should this decision become final, he will be permitted to enter the land as provided in the fourth section of the act of March 3, 1887."

[1] It it not claimed that there was any mistake in these findings of facts, or that such findings were induced by any fraud of Damon.

They are therefore, under familiar rules, conclusive upon the court. It is the contention of complainant that the Land Department erred as matter of law in awarding the land to Damon; and he cites and relies mainly upon Ard v. Brandon, 156 U. S. 537, 15 Sup. Ct. 406, 39 L. Ed. 524. But in that case Ard settled upon the land in June, 1866, for the purpose of acquiring it as a homestead. It was then unoccupied, and open to entry as a homestead. This was some seven years before it was selected by the railway company as inuring to. it under the act of Congress under which the right to the land was claimed by Brandon, and before it was withdrawn from market by the Land Department. Ard was qualified to enter it as a homestead, and did everything that was required of him by the homestead law to enter it as a homestead, but was prevented from so doing by the wrongful act of the local land office, and he remained in possession of the land, claiming it as his homestead, until the time of the trial. The map of definite location of the road was not filed, and the land was not withdrawn by the Land Department from entry and settlement, until April, 1867, nearly a year after Ard had entered upon it for the purpose of acquiring it as a homestead. The case was again before the Supreme Court in Brandon v. Ard, 211 U. S. 11, 29 Sup. Ct. 1, 53 L. Ed. 68, where it appears that the land was within the indemnity limits of the grant to the railroad company, but had not been selected by the company in lieu of land within the place limits until nearly seven years after Ard had settled upon the land and attempted to enter it as a homestead. The case is clearly distinguishable upon its facts from, and is not controlling of, this case.

[2] In the present case the complainant made an unsuccessful attempt to settle upon the land in question in October, 1895, a few days after the decision of the Supreme Court in the case of Sioux City & St. Paul Railroad Company v. United States, 159 U. S. 349, 16 Sup. Ct. 17, 40 L. Ed. 177. But at that time Damon had been in the actual possession of the land for some seven years, had broken up more than 60 acres of it, and had cultivated it either in person or by tenant during all of those years, claiming it under his contract of purchase with the railroad company. The case upon its facts is controlled by Harvey v. Holles and other cases above cited. See, also, Campbell v. Weyerhaeuser, 161 Fed. 332, 88 C. C. A. 412; Id., 219 U. S. 424, 31 Sup. Ct. 321, 55 L. Ed. 279.

The conclusion, therefore, is that the bill should be dismissed at complainant's costs; and a decree may be prepared accordingly.